IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY McCANTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 15-00027-CG-M |
| | ) | |
| GREDE II, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on the Motion for Summary Judgment (Doc. 34), Brief in Support (Doc. 35), and Evidentiary Submission in Support (Docs. 36-38) filed by Grede II, LLC[1] ("Defendant"), the response[2] (Doc. 43) filed by Anthony McCants ("Plaintiff"), and Defendant's reply (Doc. 44).  For the reasons set forth herein, Defendant's motion for summary judgment is due to be **GRANTED**.

## I. BACKGROUND

Plaintiff was employed as an "NDT shear operator" by Defendant, "a cast iron foundry." (Doc. 36-1, p. 6; Doc. 35, p. 2).  Plaintiff suffered a gunshot wound in 2011, which left him with chronic pain. (Doc. 36-1, pp. 10-12).  Plaintiff claims that he

---

[1] Plaintiff sued "Grede LLC," although the proper party is Grede II, LLC. (Doc. 6, p. 1).

[2] Plaintiff titled his response as "Plaintiff's Motion for Summary Judgment." However, the "motion" was filed out of time and reads more like a response than a motion. The Court will treat it as Plaintiff's response. To the extent that Plaintiff's filing could possibly be treated as a motion for summary judgment, the motion is denied.

missed work numerous times due to this pain, which was covered by the Family and Medical Leave Act ("FMLA"). (Doc. 1, p. 2).  Defendant argues that the excessive absences were not protected by the FMLA. (Doc. 35, p. 1).  Ultimately, Plaintiff was terminated for violating Defendant's attendance policy on February 25, 2014. (Doc. 37-4, p. 7).

Plaintiff's complaint, filed pro se, mentions the Equal Employment Opportunity Commission, discrimination, the FMLA, the Occupational Safety and Health Act, the National Labor Relations Board, the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964. (Doc. 1, pp. 1-3).  Defendant's motion for summary judgment interprets Plaintiff's complaint as asserting claims for FMLA interference and retaliation.  The Court agrees with this assessment and thus will only consider Plaintiff's allegations under the FMLA.

## II. ANALYSIS

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The trial court's mission is to "determine whether there is a genuine issue for trial" and not to "weigh the evidence." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The burden is on the moving party to show that there is no genuine dispute as to any material fact. Id. at 256.  In conducting its summary judgment analysis,

the Court must construe all evidence "in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

After the movant meets its burden, the burden shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the nonmoving party fails to do so, the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Further, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Pro Se Litigants

The pro se litigant's road to trial is fraught with peril. Ever mindful of the difficulties that pro se litigants face, a trial court will hold pro se pleadings "to a less stringent standard than pleadings drafted by attorneys." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). The court will therefore "liberally construe" the pro se pleadings. Fernandez v. United States, 941 F.2d 1488, 1491 (11th Cir. 1991). Despite this leniency, pro se litigants must "conform to procedural rules." Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002). A pro se litigant "is

subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989). The Local Rules of this Court set out the following: "All persons proceeding <u>pro se</u> shall be bound by, and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil and Criminal Procedure, unless excused by Court order." Gen. Local R. 83.5(a). The Supreme Court has recognized that the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers," stating that the Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993). Pro se litigants proceed at their own risk.

### C. Family and Medical Leave Act

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1) (2012). The Act defines "[s]erious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." <u>Id.</u> § 2611(11).

The Act allows leave to "be taken intermittently or on a reduced leave schedule when medically necessary." <u>Id.</u> § 2612(b)(1). The employee is required to provide the employer with notice in advance when the leave is foreseeable. <u>Id.</u> §

2612(e)(2).  When the leave is not foreseeable, "an employee must provide notice to

the employer as soon as practicable under the facts and circumstances of the

particular case." 29 C.F.R. § 825.303(a) (2015).  The notice must "provide sufficient

information for an employer to reasonably determine whether the FMLA may apply

to the leave request." Id. § 825.303(b).  The notice "must explain the reasons for the

needed leave so as to allow the employer to determine whether the leave qualifies

under the Act." Id. § 825.301(b).  Otherwise, the employee risks having the leave

request denied. Id. An employer may require "certification issued by the health care

provider of the eligible employee . . . . The employee shall provide, in a timely

manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a) (2012).

The certification must state:

> (1) the date on which the serious health condition commenced;
>
> (2) the probable duration of the condition;
>
> (3) the appropriate medical facts within the knowledge of the health
> care provider regarding the condition;
>
> . . .
>
> (4)(B) for purposes of leave [for an eligible employee], a statement that
> the employee is unable to perform the functions of the position of the
> employee;
>
> . . .
>
> (6) in the case of certification for intermittent leave, or leave on a
> reduced leave schedule, . . . a statement of the medical necessity for the
> intermittent leave or leave on a reduced leave schedule, and the
> expected duration of the intermittent leave or reduced leave schedule;
>
> . . .

Id. § 2613(b).  An employer may also "require that the eligible employee obtain

subsequent recertifications on a reasonable basis." Id. § 2613(e).

There are two causes of action for violations of the Act: interference claims and retaliation claims. See Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001). For interference, the Act states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1) (2012). For retaliation, the Act states, "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Id. § 2615(a)(2). The Code of Federal Regulations sheds more light on violations of the FMLA:

> The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies.

29 C.F.R. § 825.220(c) (2015).

### 1. Interference

Interference requires an employee to show "that he was entitled to a benefit under the FMLA and was denied that benefit." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1247 (11th Cir. 2015).

In order to determine whether Defendant interfered with Plaintiff's FMLA

rights, it is necessary to characterize Plaintiff's attendance during the relevant period leading up to his dismissal.  The attendance policy in effect at the time of Plaintiff's termination tracked absences and the occasions when employees arrived late or left early, colloquially referred to as "tardies" and "leave earlies," respectively.  The policy allowed for a maximum of four unexcused absences, twenty-one unexcused and excused absences in total, six tardies, and six leave earlies in a twelve-month period. (Doc. 37-3, pp. 4-5).  The total number of each category was calculated on a rolling basis. Id. at 4.  Upon reaching the maximum limit of any particular category, the employee was reviewed for discharge. Id. at 4-5.  A doctor's note was required for an absence to be excused. Id. at 4.  The employee was obligated to bring in the doctor's note on the first day he or she returned to work following the absence. Id.  Otherwise, the absence would be deemed unexcused. Id.

Plaintiff was terminated on February 25, 2014, so the relevant time period is from February 26, 2013, to the date of termination. In that time, a tally of the absence reports reveals that Plaintiff accumulated three excused absences (two medical and one funeral), two leave earlies, eleven FMLA absences and one FMLA leave early that were covered by doctor's notes, and nineteen FMLA absences, two FMLA tardies, and thirteen FMLA leave earlies that were not supported by doctor's notes. (Doc. 38-10, pp. 27-38, 45, 51, 58-59, 64, 68-69, 71, 73, 79, 82, 85-87, 94, 131-32).

Plaintiff turned in two FMLA certifications to Defendant during the year

leading up to his termination.  The first was completed by Dr. F. D. Salter on March 4, 2013. (Doc. 38-8, p. 4).  The certification states that Plaintiff will suffer from his condition for life. <u>Id.</u> at 2.  Among other dates, the certification informs that Dr. Salter treated Plaintiff on March 4, 2013, for his condition. <u>Id.</u>  Dr. Salter certified that Plaintiff would be able to perform his job despite his condition. <u>Id.</u>  The certification stated that Plaintiff would "have pain for life" but would only need to be absent from work to see the doctor for flare-ups approximately once every two months. <u>Id.</u> at 3.  The certification also listed Plaintiff's prescribed medication as Lortab 10, Soma, and Motrin. <u>Id.</u>

The last certification submitted by Plaintiff was completed on February 21, 2014, by Dr. Salter, just four days before Plaintiff's termination. (Doc. 38-9, p. 3). The certification states that Plaintiff was treated for his condition on January 9th, January 31st, and February 17th of 2014, among other dates. <u>Id.</u> at 2. Dr. Salter certified that Plaintiff would need to work a maximum of eight hours a day and five days per week from February 21, 2014, until he could see an orthopedic doctor. <u>Id.</u> at 3. The certification also warned that "muscle relaxers & pain medications have an effect on [Plaintiff's] ability to be alert." <u>Id.</u>  This certification did not give an estimate on the number of flare-ups that Plaintiff was likely to experience.

Plaintiff admitted in his deposition that he knew that Defendant needed paperwork from his doctor in order to determine whether leave would be classified as FMLA. (Doc. 36-1, p. 30). Plaintiff claims that he missed work because he was taking painkillers and therefore "would have been a safety hazard to [himself] and

other employees." Id.  However, Plaintiff conceded that his doctor never specifically told Defendant that Plaintiff could not work while taking his prescribed medication. Id.  Plaintiff also acknowledged that the FMLA certifications did not say how often he had to take his medication or provide the side effects of that medication. Id. at 43. Plaintiff recognized that he was out of work "considerably more" than the amount indicated on his FMLA certifications. Id. at 31. Plaintiff admitted that, although he left early throughout the time relevant to his claim, his certifications did not state that he needed to work reduced hours until the last certification was issued on February 21, 2014. Id. at 34-35.

Plaintiff met with Defendant's representatives multiple times to discuss his FMLA leave. (Doc. 36-1, pp. 37-38).  Plaintiff's manager and human resources manager asserted in affidavits that Plaintiff continued to misuse his FMLA leave after being warned multiple times that his FMLA certification did not cover the excessive leave that he was taking. (Doc. 37-1, pp. 6-7; Doc. 38-1, pp. 16-17).  The human resources manager maintained that he relied on Plaintiff's FMLA certifications to assess whether Plaintiff's leave was covered by the FMLA. (Doc. 38-1, pp. 5-6).  Plaintiff's manager also stated that he "never received any information or doctor's notes from Mr. McCants indicating that he had restrictions or could not otherwise perform his job." (Doc. 37-1, p. 6).  The human resources manager affirmed that he terminated Plaintiff's employment because "Mr. McCants had incurred so many tardies, absences and leave earlies in violation of Grede's attendance policy." (Doc. 38-1, p. 17).

There is no evidence that any of the FMLA leave covered by doctor's notes and certifications was used to find Plaintiff in violation of the attendance policy. Further, there is no indication that Plaintiff was denied leave covered by the FMLA. Plaintiff has failed to show that the leave not covered by doctor's notes and certifications was entitled to protection under the FMLA. The entirety of the evidence shows that Plaintiff was terminated for violating the attendance policy by taking excessive non-FMLA leave. Thus, Defendant is due to be granted summary judgment on the interference claim.

### 2. Retaliation

Retaliation requires the employee to "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland, 239 F.3d at 1207. If the employee lacks direct evidence that the employer intentionally retaliated against him, as is the case here, the employee's claim is subject to the McDonnell Douglas framework provided by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). See Strickland, 239 F.3d at 1207. For a prima facie case of retaliation, the employee must show that "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." Id.

Plaintiff suffered an adverse employment decision through his termination. However, he fails to meet the other two elements. As discussed above, Plaintiff did

not engage in statutorily protected activity.  The excessive leave he claimed under the FMLA was not eligible for coverage.  Further, viewing the evidence in the light most beneficial to Plaintiff reveals that Defendant's decision to fire Plaintiff was based on his violation of the attendance policy and not any FMLA leave.  Defendant is entitled to summary judgment on this claim.

## **CONCLUSION**

Defendant's motion for summary judgment is hereby **GRANTED**.

**DONE and ORDERED** this 29th day of July, 2016.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE